UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLOTTE ALVARADO, JAMIE
DUHRKOFF, KANDI WILSON and
NAOMI OFFIELD,

        Plaintiffs,

v.                                                                    Case No: 6:15-cv-1420-Orl-40KRS

ROBO ENTERPRISES, INC. and
CHARLES JULIAN,

        Defendants.
_____/

## ORDER

This cause comes before the Court on the following:

1. Magistrate Judge Karla R. Spaulding's Report and Recommendation (Doc. 46), filed January 6, 2016;

2. Plaintiffs' Objections to Magistrate's Report and Recommendation filed January 6, 2016 and Memorandum of Law in Support of Plaintiffs' Objections (Doc. 48), filed January 18, 2016; and

3. Defendants' Partial Objections to Magistrate's Report and Recommendation filed on January 6, 2016 and Memorandum of Law in Support of Defendants' Partial Objections (Doc. 49), filed January 19, 2016.

The Court has also reviewed the supplemental authorities filed by Defendants. (Docs. 54, 58, 61). Upon consideration of the foregoing, the Court adopts Magistrate Judge Spaulding's Report and Recommendation.

EXHIBIT "F"

I. **BACKGROUND**

Plaintiffs and Opt-In Plaintiffs bring this case alleging violations of the overtime compensation and minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and minimum wage provisions of Article X, Section 23 of the Florida Constitution. (Doc. 30). Plaintiffs and Opt-In Plaintiffs were employed as entertainers at Defendants', Robo Enterprises, Inc. and Charles Julian, adult entertainment club, Bare Assets. Defendants move to compel arbitration and stay or dismiss the proceedings. (Doc. 24). Defendants produced an executed Performer License and Temporary Space Lease Agreement ("Performer Agreement") for all four Plaintiffs and four of the six Opt-In Plaintiffs. Opt-In Plaintiff, Brittany Antonowicz, did not sign a Performer Agreement, and Defendants did not address in their motion whether Opt-In Plaintiff, Erika Gugliuzza, signed a Performance Agreement.

The motion to compel arbitration was referred to the Magistrate Judge for a Report and Recommendation (the "R&R"). With respect to the individuals who executed a Performer Agreement, the Magistrate Judge recommends that the Court refer those claims to arbitration and then stay those claims pending resolution in arbitration. (Doc. 46, pp. 7, 9). With respect to the individuals who did not execute a Performer Agreement, the Magistrate Judge recommends that the Court find that Opt-In Plaintiff Antonowicz did not consent to arbitration and thus, cannot be compelled to arbitrate, and that the Court take no action with respect to Opt-In Plaintiff Gugliuzza at this time. The Magistrate Judge also recommends that the Court decline to exercise supplemental jurisdiction over the Florida Constitution claim. (Doc. 46, p. 10). Plaintiffs and Defendants now object to the R&R for various reasons. (Docs. 48, 49).

## II. STANDARD OF REVIEW

A district judge may designate a magistrate judge to hear and determine both dispositive and non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. When a magistrate judge decides a matter that is dispositive in nature, the magistrate judge must issue a report to the district judge specifying the magistrate judge's proposed findings of fact and the recommended disposition. Fed. R. Civ. P. 72(b)(1). Any party who disagrees with the magistrate judge's decision has fourteen days from the date of the decision to seek the district judge's review of the matter by filing objections to those specific portions of the decision disagreed with. Fed. R. Civ. P. 72(b)(2). The district judge must then make a de novo determination of each issue to which objection is made. Fed. R. Civ. P. 72(b)(3). De novo review "require[s] independent consideration of factual issues based on the record." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990) (per curiam). The district judge may accept, reject, or modify the report, in whole or in part, or may recommit the matter to the magistrate judge with further instructions. Fed. R. Civ. P. 72(b)(3).

## III. DISCUSSION

### A. Plaintiffs' and Opt-In Plaintiffs' Objections

In their objection, Plaintiffs and Opt-In Plaintiffs rely on four primary arguments against compelling arbitration: (1) the purported arbitration provisions in the Performer Agreements lack retroactivity language and do not require arbitration of the FLSA and state wage claims for the periods worked prior to the commencement date of the Performer Agreements; (2) the Performer Agreements lack a material term—namely, the base license fee; (3) a condition precedent to the formation of the Performer Agreements has not been satisfied as none of the Performer Agreements presented include an

executed performer relationship execution form; and (4) the language of the Performer Agreements preclude Plaintiffs' statutory claims from being arbitrable. (Doc. 48, p. 3).

It is well-established that parties may contract to settle potential disputes by arbitration and that such agreements are favored. *Vaden v. Discovery Bank*, 556 U.S. 49, 58 (2009); 9 U.S.C. § 2. As a corollary, "a party cannot be required to submit to arbitration any dispute which [s]he has not agreed to so submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). When a court finds a valid and enforceable arbitration clause binding among the parties, the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Because the right to arbitrate must be liberally enforced, any doubt about whether a dispute is arbitrable should be resolved in favor of arbitration. *AT&T Techs.*, 475 U.S. at 650.

As with any contractual provision, the plain meaning of the agreement to arbitrate and the parties' intentions control. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682–83 (2010). Importantly, when determining whether the parties have agreed to submit a particular dispute to arbitration, the court must not rule on the potential merits of a claim; instead, the court must limit its consideration solely to the question of that claim's arbitrability according to the parties' agreement. *AT&T Techs.*, 475 U.S. at 649–50. Arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650.

The arbitration agreement at issue in this case provides:

> 16. ARBITRATION. <u>The parties agree that this Agreement is subject to binding arbitration</u> pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this

4

Agreement will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association ["AAA"], Florida branch, and the determination of the arbitrator shall be final and binding (except to the extent there exist grounds for vacation of an award under applicable arbitration statutes). The parties agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to any proceeding commenced under this Section 16. The arbitrator will have no authority to make any ruling, finding or award that does not conform to the terms and conditions of this Agreement. Each party shall bear its own costs in any arbitration. The arbitration provision contained herein shall be self executing and shall remain in full force after expiration or termination of this Agreement. In the event any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party by default or otherwise, notwithstanding such failure to appear. The place of arbitration shall be BREVARD COUNTY, FLORIDA. The arbitrator shall give effect insofar as possible to the desire of the parties hereto that the dispute or controversy be resolved in accordance with good commercial practice and the provisions of this Agreement. **To the fullest extent permitted by law, the arbitrator shall apply the commercial arbitration rules of the American Arbitration Association and Title 9 of the U.S. Code, except to the extent that such rules conflict with the provisions of this Section 16 in which event the provisions of this Section 16 shall control.**

THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. ALL PARTIES SHALL HAVE THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL AT ARBITRATION. THE ARBITRATOR SHALL PERMIT REASONABLE DISCOVERY. THE PARTIES SHALL HAVE THE RIGHT TO SUBPOENA WITNESSES IN ORDER TO COMPEL THEIR ATTENDANCE AT HEARING AND TO CROSS-EXAMINE WITNESSES, AND THE ARBITRATOR'S DECISION SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW PURSUANT TO THE FAA. FOR ANY CLAIMS OF THE PERFORMER BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTORY PROTECTIONS, THE CLUB SHALL PAY ALL FEES CHARGED BY THE ARBITRATOR. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO

> RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY OF ANY PART OF THIS LICENSE, AND ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.
>
> PERFORMER UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT HE/SHE SPECIFICALLY WAIVES ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AND IF AT ANY TIME PERFORMER IS DEEMED A MEMBER OF ANY CLASS CREATED BY ANY COURT IN ANY PROCEEDING, HE/SHE WILL "OPT-OUT" OF SUCH CLASS AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HIS/HER BEHALF PERFORMER SHALL WAIVE HIS/HER RIGHTS TO ANY SUCH MONETARY RECOVERY.

(Docs. 24-1 through 24-9, pp. 6–7) (bolded emphasis added, all other alterations in original).

Plaintiffs contend that the Magistrate Judge did not address whether the arbitration agreement could be applied retroactively. However, a close reading of the R&R indicates that the Magistrate Judge directly addressed the issue, stating that the claims of those individuals who executed Performer Agreements should be submitted to arbitration to determine arbitrability in accordance with *Terminix International Co. v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327 (11th Cir. 2005). In *Terminix*, the Eleventh Circuit held that, by incorporating the American Arbitration Association ("AAA") Rules into their arbitration agreement, "the parties clearly and unmistakable agreed that the arbitrator should decide whether the arbitration clause is valid" because the AAA Rules give the arbitrator power to rule on his or her own jurisdiction. *Id.* at 1332. The arbitration provision at issue in *Terminix* provided that "arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association." *Id.* In fact, AAA Rule 7(a) states, "The arbitrator shall have the power to

rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Am. Arbitration Ass'n, Commercial Arbitration Rule and Mediation Procedures R. 7(a). Thus, the *Terminix* decision stands for the proposition that initial determinations regarding an arbitration provision's scope, existence, and validity are delegated to the arbitrator if the AAA rules are invoked in such a manner.

The Performer Agreements here specifically provide as follows: "To the fullest extent permitted by law, the arbitrator shall apply the commercial arbitration rules of the American Arbitration Association and Title 9 of the U.S. Code, except to the extent that such rules conflict with the provisions of this Section 16 in which event the provisions of this Section 16 shall control." Thus, the Magistrate Judge found that this language was similar to what was found in *Terminix* and that determining whether the arbitration provision in the Performer Agreements was retroactive—*i.e.*, the scope of the arbitration provision—was outside the province of the Court based on what the parties agreed to:

> Plaintiffs contend, for a variety of reasons, that . . . some or all of their claims do not fall within the scope of the arbitration provision, *id.* at 13–18. In light of the determination that the question of arbitrability should be submitted to arbitration, it is not appropriate for the Court to express an opinion on these issues. *See Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1033 (11th Cir. 2003) ("Having decided the issues 'essential to defining the nature of the forum in which a dispute will be decided,' we should not and will not decide any more.") (citation omitted) (quoting *Munick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1261 (11th Cir. 2003)). Similarly, whether or not the class action and collective action waiver is enforceable, *see* Doc. No. 23, at 16–17, is an issue to be resolved in arbitration.

(Doc. 46, p. 8 n.7).

Without addressing the Magistrate Judge's reliance on *Terminix*, Plaintiffs contend that the Court should instead follow *Carter v. Doll House II, Inc.*, 608 F. App'x 903 (11th Cir. 2015) (per curiam). In *Carter*, the Eleventh Circuit held that the arbitration clause at issue was not retroactive because the arbitration agreement referred "'only to 'any dispute regarding this contract/agreement.'" *Id.* at 904. Similarly, in *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1116–17 (11th Cir. 2009), the Eleventh Circuit held that the arbitration clause at issue was not retroactive where the arbitration clause provided that "[a]ny and all disputes *arising out of or in connection with this Agreement, . . .* shall be referred to, and finally resolved by arbitration."

Defendants respond by citing two Florida district court cases which recently addressed the issue of retroactivity of arbitration provisions in factually similar circumstances. In *Monteverde v. West Palm Beach Food & Beverage, LLC*, Judge Rosenberg determined that whether the arbitration clauses at issue was retroactive should be determined by the arbitrator. No. 9:15-CV-81203-ROSENBERG/HOPKINS, 2016 WL 1161224, at *12 (S.D. Fla. Mar. 24, 2016). In that case, the arbitration provision provided: "The parties agree that *any* controversy, dispute or claim arising out of this Agreement *or otherwise out of Entertainer performing at the Premises* shall be exclusively decided by binding arbitration." *Id.* at *11. Judge Bloom reached a similar result in *Ormendo v. S&J Crazy Lizards Entertainment LLC*, No. 15-CIV-81726, slip op. at 14 (S.D. Fla. Apr. 8, 2016) (order compelling arbitration). In that case, the arbitration provision was also broadly worded, providing for arbitration of "any dispute arising under this agreement *and or my work as a Contractor*." *Id.* at p. 14. Judge Bloom recognized that the arbitration provisions in *Monteverde* and *Ormendo* provided "a broader-reaching

scope of arbitrability than those clauses in *Thompson* and *Carter*, which referred 'only' to disputes arising under the specific agreement." *Id.*

Plaintiffs are correct that the wording in the instant arbitration provisions are more similar to those in *Carter* and *Thomas* and are not as broad as those in *Monteverde* and *Ormendo*. However, while *Carter* and *Thomas* were decided after *Terminix*, neither case explicitly addressed whether the AAA rules were invoked in those arbitration provisions, presumably because that was not an issue in either case.

Rather, the issue for the Court to decide is whether determination of the scope of the arbitration provisions at issue was delegated to the arbitrator in the Performer Agreements in the first instance. As previously discussed, the general rule is that "challenges to the validity of the arbitration clause . . . must be resolved by the court before deciding a motion to compel arbitration." *Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015). However, where there is a delegation provision which commits the threshold determination of the scope of the arbitration clause to the arbitrator, for example, by invoking the AAA rules in the manner the parties did here, the district court must commit those decisions to the arbitrator. *See Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015) (holding that "when a plaintiff seeks to challenge an arbitration agreement containing a delegation provision, he or she must challenge the delegation provision directly" and in the absence of doing so, the court has no jurisdiction to review the challenge to the contract); *Terminix*, 432 F.3d at 1332–33. Here, the parties expressly and unambiguously invoked the AAA rules and thus, it will be up to the arbitrator to determine whether the arbitration provisions in the Performer Agreements are retroactive.

The Court will also not reach Plaintiffs' and Opt-In Plaintiffs' additional arguments that the Performer Agreements lack a material term, that a condition precedent to the formation of the Performer Agreements has not been met, and that the language of the Performer Agreements preclude Plaintiffs' statutory claims from being arbitrable. "Challenges to the validity of the contract as a whole are for the arbitrator to decide . . . ." *Wiand*, 778 F.3d at 924. Therefore, the arbitrator of these issues will address such arguments.

### B. Defendants' Objections

Defendants object to the Magistrate Judge's recommendation that Opt-In Plaintiff Antonowicz, who did not sign a Performer Agreement, and Opt-In Plaintiff Gugliuzza, for whom there is no evidence of a signed Performer Agreement, be allowed to go forward in this Court. Defendants contend that these two Opt-In Plaintiffs' claims are outside the applicable statute of limitations, unless Defendants are found to have willfully violated the FLSA. There is currently no motion before the Court to dismiss the claims of Opt-In Plaintiffs Antonowicz and Gugliuzza as being outside the statute of limitations. Therefore, Defendants' objections are overruled.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Objections to Magistrate's Report and Recommendation filed January 6, 2016 and Memorandum of Law in Support of Plaintiffs' Objections (Doc. 48) are **OVERRULED.**

2. Defendants' Partial Objections to Magistrate's Report and Recommendation filed on January 6, 2016 and Memorandum of Law in Support of Defendants' Partial Objections (Doc. 49) are **OVERRULED.**

3. Magistrate Judge Karla R. Spaulding's Report and Recommendation (Doc. 46) is **ADOPTED AND CONFIRMED** and made a part of this Order.

4. Defendants' Motion to Compel Arbitration and Stay or Dismiss the Proceedings, and to Stay Discovery Pending Determination of the Motion (Doc. 24) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. Plaintiffs and Opt-In Plaintiffs Arreaga, Rodriguez, Crebs, and Scott are **COMPELLED** to submit all of their claims to arbitration. The case is **STAYED** as to these individuals only.

   b. The Court **DECLINES** to exercise supplemental jurisdiction over Opt-In Plaintiff Antonowicz's Florida Constitution claim. That claim is **DISMISSED WITHOUT PREJUDICE** with leave to file it in a Florida state court as permitted by 28 U.S.C. § 1367(d).

   c. The motion is **DENIED** in all other respects.

   d. The parties are **DIRECTED** to file a joint report on the status of the arbitration on August 5, 2016, and every sixty (60) days thereafter until the arbitration has been concluded.

5. **On or before June 9, 2016**, Defendants are **DIRECTED** to file a motion to compel arbitration as to Opt-In Plaintiff Gugliuzza, if she signed a Performer Agreement, or to notify the Court that Opt-in Plaintiff Gugliuzza did not sign a

Performer Agreement or other arbitration agreement.

**DONE AND ORDERED** in Orlando, Florida on June 2, 2016.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties